IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTHONY HEUSER AND NONA HEUSER,

      Plaintiffs,

vs.                                                                                     NO.  CV 04-0105

THE SAN JUAN COUNTY BOARD OF
COMMISSIONERS, JERRY LARRAÑAGA, NEW MEXICO
TAXATION AND REVENUE DEPARTMENT,
IN HIS INDIVIDUAL CAPACITY, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**I. Introduction.**

    **THIS MATTER** is before the Court on three motions filed by Defendant Jerry Larrañaga ("Mr. Larrañaga"):  1) a motion to dismiss pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) & (2) for lack of personal or subject matter jurisdiction based on the immunity afforded state officials by the Eleventh Amendment to the Federal Constitution; 2) a motion for summary judgment based on qualified immunity; and 3) a motion for summary judgment based on absolute or quasi-judicial immunity.  For the reasons that follow, Mr. Larrañaga's motion to dismiss pursuant to Rule 12(b) 1 & 2 will be **GRANTED**.  In the alternative, Mr. Larrañaga's motion for summary judgment based on qualified immunity will be **GRANTED**.

**II. Background and Procedural History.**

    Anthony and Nona Heuser ("the Heusers") are an elderly couple who own property in San Juan County, New Mexico.  (Compl. ¶¶ 1-2, 15.)  On June 1, 2000, the Heusers received a "Notice

of Valuation" from the San Juan County Assessor, which changed the classification of their property from agricultural to non-agricultural. (Compl. ¶ 11.) On January 30, 2001, the Heusers appeared *pro se* before the San Juan County Tax Protest Board ("Board") to contest the county assessor's designation of their property as non-agricultural. (Compl. ¶¶ 4, 15.) Mr. Larrañaga was Chairman of the Board and an employee of the Taxation and Revenue Department of the State of New Mexico when he presided over the Heusers' hearing. (Compl. ¶¶ 3, 16.)

On March 30, 2001, the Board upheld the county assessor's classification of the Heusers' property as non-agricultural. (Compl. ¶ 25.) The classification of their property as non-agricultural required the Heusers to pay higher property taxes. (Compl. ¶ 25.) The Board's classification of the Heusers' property as non-agricultural caused the taxes paid for the year 2000 to exceed the amount due had the property been classified as non-agricultural by the sum of $40.02. (*See* Reply to Pls.' Mem. of Law in Opp'n to Def.'s Mot. for Qualified Immunity Summ. J., Ex. 5.) Mr. Larrañaga provided a transcript of the hearing before the Board as well as a copy of the Board's decision. (*See* Reply to Pls.' Mem. of Law in Opp'n to Def.'s Mot. for Qualified Immunity Summ. J. Exs. 2, 3.)

Following the Board's decision, the Heusers utilized the available appeal process and appealed the Board's decision to the Eleventh Judicial District Court of San Juan County. (*See* Reply to Pls.' Mem. of Law in Opp'n to Def.'s Mot. for Qualified Immunity Summ. J., Ex. 5.) In October, 2001, the district court overturned the Board's decision pursuant to the parties' stipulations and restored the agricultural tax exemption to the Heusers' property. *Id.*

Nevertheless, the Heusers are suing Mr. Larrañaga in federal court for deprivation of their First, Fifth, and Fourteenth Amendment rights in violation of 42 U.S.C. §§ 1983 and 1988. (*See* Compl. at 1.) Although the Heusers indicate their intention to sue Mr. Larrañaga "in his individual

capacity" on the face of the complaint they state later in the complaint that: "At all times pertinent each Defendant acted in the scope of his/her employment and under color of the laws of the State of New Mexico and San Juan County." (Compl. ¶ 9.) In addition, in the Heusers response to Mr. Larrañaga's motion to dismiss, they acknowledge that the *county,* not Mr. Larrañaga personally, offered them money at a settlement conference but that the "*state* now wishes to make a prolonged fight of this matter." (Pls.' Resp. to Def.'s Mot. to Dismiss at 1) (emphasis added).

The Heusers allege that the Board deprived them of their property without due process of law for several reasons:  1) the Board did not provide the Heusers with any notice of their rights prior to the protest hearing and did not conduct the hearing within 180 days after the Heusers filed their initial protest; 2) the Board improperly placed the burden of proof on the Heusers to show that their property should be classified as agricultural; 3) the Board was comprised of members biased against the Heusers and issued a decision that was arbitrary, capricious, and not supported by substantial evidence in the record. (Compl. ¶ 25.) The Heusers claim that although Mr. Larrañaga does not personally know them, his bias against them stemmed from a widely publicized lawsuit the Heusers filed in 1995 against the Farmington Utility System and other San Juan County defendants for the unlawful termination of their electrical service. (Compl. ¶ 23; *Heuser v. Johnson, et al.*, 189 F. Supp.2d 1250 (D.N.M. 2001)). The federal court granted the Heusers' motion for partial summary judgment on August 2, 2001. *Id.* at 1272.

In response, Mr. Larrañaga filed a motion to dismiss based on Eleventh Amendment immunity and motions for summary judgment based on qualified and absolute immunity.

3

**III. Analysis.**

    **A. The Eleventh Amendment.**

        **1. History and background.**

The Eleventh Amendment, formally ratified in 1798, provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Supreme Court held that "reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of California, et al. v. Doe*, 519 U.S. 425, 429 (1997). Moreover, although the Eleventh Amendment does not by its terms apply to this action against a New Mexico government official because the Heusers are citizens of New Mexico, it is well established that a State, which does not consent to being sued, is immune from suits brought in federal courts by her own citizens as well as by citizens of another State. *See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Edelman v. Jordan et al.,* 415 U.S. 651, 662-63 (1974). The Supreme Court stated that the "[Eleventh] Amendment . . . accords the States the respect owed them as members of the federation [and] . . . its ultimate justification is the importance of ensuring that the States' dignitary interests can be fully vindicated." *Metcalf & Eddy, Inc.*, 506 U.S. at 146.

        **2. The Eleventh Amendment applies to Mr. Larrañaga.**

Although federal law determines whether the Eleventh Amendment applies in a given case, the Court should make that determination only after "considering the provisions of state law that define the agency's character." *Buchwald v. Univ. of New Mexico Sch. of Medicine*, 159 F.3d 487,

494 n. 3 (internal quotations omitted).  Under New Mexico law, "'State Agency' means any department, institution, board, bureau, commission, district or committee of government of the state of New Mexico and means every office or *officer* of any of the above." N.M. STAT. ANN. § 6-3-1 (Michie 2003) (emphasis added).  The Court considers Mr. Larrañaga, as an employee of the state's Taxation and Revenue Department, to be an agent of the State of New Mexico.

Furthermore, the Court engages in a two part inquiry to determine if an entity is eligible for Eleventh Amendment immunity as an "arm of the state":  1) how much autonomy is given to the agency, as determined by state law and how much control the state exercises over the entity; and 2) to what extent the entity relies on funding from the state treasury. *Buchwald*, 159 F.3d at 494 n. 3. First, the state exercises extensive control over the Taxation and Revenue Department, which employed Mr. Larrañaga.  For example, the legislature established the department, described the department's purpose, determined how to appoint the head, or secretary, of the department, and how the department should use appropriated funds. *See* N.M. STAT. ANN. § 6-3-1 et seq.; N.M. STAT. ANN. § 7-1-1 et seq.; N.M. STAT. ANN. § 9-11-1 et seq.  Second, the Taxation and Revenue Department relies on funding solely from the State of New Mexico. *See* N.M. STAT. ANN. § 6-3-7; N.M. STAT. ANN. § 7-39-10;  N.M. STAT. ANN. § 9-11-1 et seq.  Therefore, Mr. Larrañaga, as an employee of the Taxation and Revenue Department, can assert a defense based on Eleventh Amendment immunity.

In addition, the Supreme Court noted that "whether a money judgment against a state instrumentality or official would be enforceable against the State is of considerable importance to any evaluation of the relationship between the State and the entity or individual being sued." *Doe*, 519 U.S. at 430 (internal citations omitted).  New Mexico law provides that "a governmental entity shall

provide a defense, including costs and attorney fees, for any public employee when liability is sought for . . . any violation of property rights or any rights . . . secured by the constitution and laws of the United States . . . when alleged to have been committed by the public employee while acting within the scope of his duty." N.M. STAT. ANN. § 41-4-4 B(2). Moreover, under New Mexico law: "A governmental entity *shall* pay any settlement or any final judgment entered against a public employee for . . . a violation of property rights or any rights . . . secured by the constitution and laws of the United States . . . while the public employee was acting within the scope of his duty." N.M. STAT. ANN. § 41-4-4 D(2) (emphasis added). The State of New Mexico must pay the costs of Mr. Larrañaga's defense as well as any judgment the Heusers' may obtain against him. Since the Heusers' could enforce any judgment they obtain from Mr. Larrañaga against the State of New Mexico, therefore, Mr. Larrañaga and the entity he works for would be considered arms of the state for purposes of Eleventh Amendment immunity. Mr. Larrañaga, then, can properly assert an Eleventh Amendment immunity defense in this case.

### 3. The *Ex parte Young* exception to Eleventh Amendment immunity.

In *Ex parte Young*, 209 U.S. 123, 159 (1908), the Supreme Court recognized a narrow exception to Eleventh Amendment immunity, which applies to suits brought in federal courts against state officials in their official capacity. *See also Buchwald*, 159 F.3d at 495 (10th Cir. 1998) (internal citations omitted). The Supreme Court explained the *Ex parte Young* exception in the following manner: "The doctrine of *Ex Parte Young*, which ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law, is regarded as carving out a necessary exception to Eleventh Amendment immunity. Moreover, the exception is narrow: It applies only to prospective relief, does not permit judgments against state officers declaring that they

violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Metcalf and Eddy, Inc.*, 506 U.S. at 146 (internal citations omitted). The *Ex parte Young* exception to Eleventh Amendment immunity does not appear to apply in this case because the Heusers' seek retrospective relief, that is, relief for a past violation of their due process rights. The *Ex parte Young* doctrine does not provide an exception to Eleventh Amendment immunity in these types of suits. The Heusers argue, however, that since they are suing Mr. Larrañaga in his individual capacity, the Eleventh Amendment should not bar their suit.

### 4. Individual vs. Official capacity suits.

The Tenth Circuit stated that as "a general rule, suits seeking damages from state officials in their individual capacities are not barred by the Eleventh Amendment." *Cornforth v. Univ. of Oklahoma Bd. of Regents*, 263 F.3d 1129, 1133 (10th Cir. 2001). The Tenth Circuit explained that: "The Eleventh Amendment is not implicated in such suits because any award of damages will be satisfied from the individual's personal assets and will not be paid from the state treasury. If the sovereign is obligated to pay any damage award entered against the state official, however, the Eleventh Amendment bars the suit." *Edelman,* 415 U.S. at 663; *Cornforth*, 263 F.3d at 1133. The Heusers allege that Mr. Larrañaga deprived them of their property rights without due process while acting in his official capacity as an employee of the Taxation and Revenue Department. New Mexico law requires the state to pay any damage award entered against Mr. Larrañaga. N.M. STAT. ANN. § 41-4-4. The Eleventh Amendment, therefore, bars the suit against Mr. Larrañaga.

On the other hand, the Supreme Court has noted that "[p]ersonal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham, et al.*, 473 U.S. 159, 165 (1985). The Supreme Court stated that "while an

award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.* at 166. In *Graham*, Respondents asserted causes of action under 42 U.S.C. §§ 1983 and 1988 against individual police officers and the Commonwealth of Kentucky for illegal searches, false arrests, and the use of excessive force in the course of searching Respondents' house. *Id.* at 161-62. In *Graham*, the Commonwealth refused to defend any of the individual defendants or pay their litigation expenses. *Id.* at 162. The Commonwealth was eventually dismissed as a party and the Supreme Court construed the action as one against the defendants in their individual capacity. *Id.* at 162, 167-69. In this case, however, the State of New Mexico must cover the costs of defending Mr. Larrañaga.

Going further, even if the complaint does not name the state as a party, the state can be "the real party in interest" so that "[a] suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Cornforth*, 263 F.3d at 1133 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n. 11 (1984)). Because New Mexico must pay the costs of defending Mr. Larrañaga and would have to pay any judgment entered against him in this case, the State, not Mr. Larrañaga, is the real party in interest. The Supreme Court noted that "when the action is in essence one for the recovery of money from the state the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Doe*, 519 U.S. at 429 (internal quotations omitted).

The Heusers concede that the action is essentially one for the recovery of money from the state. They acknowledge that they received a settlement offer from the "county" but that the state wanted to pursue the case further. Mr. Larrañaga, as an agent of the state, can invoke his Eleventh Amendment immunity. Because the Court finds that the Amendment bars the suit, it can not assert personal or subject matter jurisdiction over Mr. Larrañaga. Mr. Larrañaga's motion to dismiss pursuant to Rule 12(b)(1) & (2), therefore, will be granted. In the alternative, however, the Court will analyze Mr. Larrañaga's qualified immunity defense.

**B. The qualified immunity defense.**

**1. Background.**

Our courts recognize two kinds of immunity defenses: absolute immunity and qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). The defense of absolute immunity applies to "officials whose special functions or constitutional status requires complete protection from suit . . . ." *Id.* Legislators, for instance, are entitled to absolute immunity in their legislative functions and judges are entitled to absolute immunity for actions taken in their judicial capacity. *Id.* For government officials like Mr. Larrañaga, however, "our cases make plain that qualified immunity represents the norm." *Id.*

The qualified immunity defense attempts to strike a balance between "the importance of a damages remedy to protect the rights of citizens, but also 'the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.'" *Id.* (internal citations omitted). Without the qualified immunity defense, courts would struggle to curtail the substantial social costs associated with harassing litigation involving government officials, including the fear that personal monetary liability would

9

"unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

The doctrine of qualified immunity, therefore, shields government officials performing discretionary functions from liability for civil damages arising from 42 U.S.C. § 1983 claims brought against them in their individual capacities. *Harlow*, 457 U.S. at 818. Even if the Heusers' lawsuit is construed as a personal capacity suit against Mr. Larrañaga, the qualified immunity defense would apply. Moreover, the courts draw no distinction between 42 U.S.C. § 1983 suits against state officials and suits against federal officials under the Constitution. *Id.* Because Mr. Larrañaga is a state official being sued in his individual capacity under 42 U.S.C. § 1983, his assertion of the qualified immunity defense is proper. Individual government actors retain their immunity unless the plaintiff can show that they violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The Court can not hold Mr. Larrañaga liable unless he violated a clearly established constitutional right. The Supreme Court reasoned that: "If the law at that time was not clearly established, an official could not reasonably be expected to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* at 819.

**2. The qualified immunity analysis.**

The Court, therefore, must first determine "whether the plaintiff has alleged a deprivation of a [statutory or] constitutional right at all" and only if the answer to that question is yes does the Court consider whether that right was clearly established at the time so that reasonable officials would have understood that their conduct violated that right. *County of Sacramento v. Lewis*, 523 U.S. 833, 841, n.5 (1998); *Trotter v. The Regents of the Univ. of New Mexico,* 219 F.3d 1179, 1184 (10th Cir. 2000). Yet a plaintiff must do more than identify a clearly established right in the abstract and allege

that the defendant violated that right. *Anderson*, 483 U.S. at 640. Although the Heusers have a clearly established constitutional right to due process under the Fifth and Fourteenth Amendments, they must allege sufficient facts that, if true, would show that Mr. Larrañaga violated their due process rights. The Heusers failed to allege sufficient facts.

The Tenth Circuit has held that: "When a government official raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must produce facts sufficient to show both that the defendant's alleged conduct violated the law and that [the] law was clearly established when the alleged violation occurred." *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991) (internal quotations omitted). The Tenth Circuit noted that: "Only after the plaintiff has met this burden must the defendant bear the usual summary judgment movant's burden of showing that no material issues of fact remain that would defeat his or her claim of qualified immunity." *Id.* (internal quotations omitted).

In this case, the Heusers' had a clearly established due process right to notice and a hearing before the Board deprived them of their property by increasing the amount of property taxes they owed based on the classification of their property as non-agricultural. Mr. Larrañaga, however, did not violate that right. Although the Heusers allege that they did not receive proper notice of the hearing before the Board over which Mr. Larrañaga presided, they did receive a "Notice of Valuation" from the county assessor on June 1, 2000 informing them that their property had been re-classified as non-agricultural. Utilizing the available process, the Heusers appeared before the Board to protest this new classification of their property.

The Heusers alleged that the Board improperly placed the burden of proof on the Heusers at the hearing because under New Mexico law a presumption exists that property previously designated

11

as agricultural should continue to be classified as such. N.M. STAT. ANN. § 7-36-20. But the Board stated in its decision that the county assessor provided sufficient evidence to overcome this presumption. In any event, the Heusers took advantage of the appeals process in place to safeguard their due process rights from an erroneous decision by the Board. The Heusers appealed to the San Juan County District Court, which overturned the Board's decision and classified their property as agricultural once again. As a result, the Heusers did not have to pay the higher taxes that owners of non-agricultural property must pay. The Court finds, therefore, that Mr. Larrañaga, Chairman of the Board and an employee of the Taxation and Revenue Department, did not violate the Heusers' due process rights.

The Heusers also argue, however, that Mr. Larrañaga was biased against them at the initial hearing before the Board because of their previous lawsuit against San Juan County officials. When the plaintiff's claim contains a subjective element, such as the defendant's purpose, motive, or intent, the summary judgment analysis differs slightly. The Tenth Circuit has stated that: "When a defendant moves for summary judgment asserting he is qualifiedly immune and his state of mind is an element of the plaintiff's claim, he must make a prima facie showing of the objective reasonableness of the challenged conduct." *Bruning*, 949 F.2d at 356-57. Mr. Larrañaga's alleged bias could be considered an essential element of the Heusers' substantive due process claim. Mr. Larrañaga, however, made a showing of the objective reasonableness of the Board's decision. The Board listed several reasons for classifying the Heusers' property as non-agricultural: 1) an alkaline condition on the property's soil made cultivation difficult; 2) according to the county assessor only the back one-acre of the five-acre tract of land showed evidence of planting, which could not even support one animal; 3) nothing grown on the property was either harvested or grazed on a regular basis; and 4)

12

the only evidence of the use of the pastorage was that the Heusers allowed their neighbors' horses on the property occasionally but the Heusers themselves owned no animals. (*See* Reply to Pls.' Mem. of Law in Opp'n to Def.'s Mot. for Qualified Immunity Summ. J., Ex. 3.) Mr. Larrañaga met the prima facie showing because these factors taken together show the Board's decision was objectively reasonable.

Next, "[i]f the defendant makes this prima facie showing, the plaintiff must produce specific evidence of the defendant's culpable state of mind to survive summary judgment." *Bruning*, 949 F.2d at 357. The Heusers provided no evidence that Mr. Larrañaga was personally biased against them. In fact, the only time Mr. Larrañaga came in contact with the Heusers was when they appeared before him at their hearing. The only evidence of bias the Heusers present is that Mr. Larrañaga must have known of their previous lawsuit given the amount of publicity it received in various New Mexico newspapers. Even if Mr. Larrañaga knew of their previous lawsuit when he presided over the hearing in front of the Board, the Heusers provided no evidence of bias against them as a result of their earlier lawsuit.

The Heusers do not dispute that they had a hearing in front of the Board on January 30, 2001 or that Mr. Larrañaga acted within the scope of his employment at the New Mexico Taxation and Revenue Department when he presided over their hearing. They do not dispute that after the Board issued it's decision, which listed several reasons for changing the designation of their property to non-agricultural, they exercised their right to appeal the Board's decision to the San Juan District Court. The Heusers do not dispute that the district court reversed the Board's decision and provided the Heusers with the relief they sought by reclassifying their property as agricultural. Lastly, although the Heusers claim that Mr. Larrañaga ruled against them at the hearing before the Board because of

13

a personal bias against them, the Heusers offer no specific evidence in support of this claim. The Court finds, therefore, that because no genuine issues of material fact exist Mr. Larrañaga's alternative motion for summary judgment based on qualified immunity is granted.

**For the foregoing reasons Mr. Larrañaga's motion to dismiss pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) & (2) based on Eleventh Amendment immunity is GRANTED. In the alternative, Mr. Larrañaga's motion for summary judgment based on qualified immunity is GRANTED.**

ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE